# Irvine *against* Lumbermen's Bank.

In an action upon a note, preliminary proof of the hand-writing of the drawers is all that is required for its admission in evidence; all else as to the time, manner and circumstances under which it was signed, must be the subject of subsequent investigation by the jury.

An indirect and contingent liability of a witness is not sufficient to exclude his testimony on the ground of interest: it affects only his credibility.

The violation of a charter of incorporation cannot be made the subject of judicial investigation in a collateral suit. The only evidence competent to prove the forfeiture of a charter is the judgment of a court directly on the point.

The discounting of a note made payable " in the office notes of the bank," is not a violation of the 14th article of the Act of the 25th March 1824, which prohibits corporations from dealing otherwise than upon legitimate subjects of banking.

A bank which discounts the note of several individuals cannot be affected by a fraud or misunderstanding among the drawers themselves, unless it participated in it.

The pendency of a foreign attachment, as matter of defence, can only be made available by a plea in abatement: if judgment has been rendered upon it, and executed against the garnishee, who is afterwards sued for the original debt, he may plead it in bar.

*Quære?* May the pendency of a personal action for the same cause in a foreign state be pleaded in abatement?

In an action upon a promissory note for the payment of a certain sum in bank-notes of a certain bank, the measure of damages is the amount of the note with interest, and not the specie value of the bank-notes; but in executing the judgment, the court will take care that no injustice be done.

That a person called as a juror had formed and expressed an opinion, from the statement of others, of a general state of indebtedness by one party to the other, without any particular knowledge of the facts of the case which he is called to try, does not amount to a good cause of challenge.

ERROR to the Special Court of *Warren* county.

The Lumbermen's Bank at Warren against Guy C. Irvine, N. A. Lowry, Elial T. Foote, and Fidelio W. Brigham. This was an action of *assumpsit*, in which the plaintiff filed a statement upon the following note:

" *Warren, Pa., Sept.* 18, 1837.

" $18,365.

" Being jointly interested, we promise to pay to the order of the Lumbermen's Bank at Warren, in the office notes of said Bank, $18,365, payable at their banking-house in Warren in three months.

" Guy C. Irvine,<br>N. A. Lowry,<br>E. T. Foote,<br>F. W. Brigham."

[Irvine v. Lumbermen's Bank.]

Upon the trial of the cause, the defendants offered to put in special pleas in substance as follows:

And now, to wit, 28th January 1840, The said defendants, by their attorney, come, &c., setting out that on the 22d of February 1838, one Sedgwick Benham, of the county of Chautauque, in the State of New York, in the Supreme Court of Judicature of the people of the State of New York, being a court of record and holding jurisdiction, &c., sued out an attachment, according to the statutes of the said State of New York, against the said Lumbermen's Bank at Warren, being a foreign corporation, for a large sum of money, to wit, the sum of $1475, then and there owing and due from the said plaintiff to the said Benham, and by virtue of the said attachment and the statutes of the said State of New York, attached the alleged debt or demand of the said Lumbermen's Bank at Warren against said defendants in said declaration mentioned in the hands of said Lowry and Foote, and they being residents and citizens of the said county of Chautauque, held and still continue to be holden for the sum due from the said bank, and thereupon the said bank, by their proper attorney, appeared in pursuance of the statutes, &c., an issue formed and recovery of judgment for the sum of $1742,83, as appears by the record of the said Supreme Court, and this, &c.

And for further plea, &c., setting out attachment in the same manner in favour of Henry B. Van Buren for a debt of $1200, served upon the said defendants, still remaining undetermined in the said court, served 24th February 1838.

And for further plea, &c., setting out similar attachment, &c., in favour of Nathaniel P. Copp, for a debt of $1750, served upon the same defendants, and still remaining undetermined, which attachment was served 5th March 1838.

That by virtue of the said attachments and the statutes of the State of New York, the said defendants are restrained and prohibited from making payment to the plaintiff of the said sums mentioned in the plaintiff's declaration, and this they are ready to verify, &c.

The court refused the pleas, and sealed a bill of exceptions.

On proceeding to trial, it was proposed by the defendants to ask each juror by name whether he had formed or expressed any opinion as to the indebtedness of the defendants to the plaintiff. John S. Davis called as a juror, to whom this question was put, answered that he had never formed or expressed an opinion as to the indebtedness of the defendants in this suit on the demand read; that he knew nothing of the defence of defendants, nor expressed an opinion thereon; that he had expressed an opinion as to the indebtedness of these defendants to the bank from hearing of others; that he had never seen the demand in controversy between the parties. The defendants challenged the juror for this cause, but

the court overruled the challenge, and directed the juror to be sworn, which was done, and the defendants excepted.

On the trial, the plaintiff offered in evidence a note with the names of the defendants thereon, dated 18th September 1837, for $18,365, payable in the office notes of the Lumbermen's Bank at Warren, and payable to Lumbermen's Bank at Warren, having given in evidence the charter and Act of incorporation, and having given evidence of the execution of the note by the testimony of Robert Miles, as follows: " that the signatures of Guy C. Irvine, N. A. Lowry, and Elial T. Foote are genuine; that he saw the note before in January or February 1838; that the names of Guy C. Irvine, N. A. Lowry, and E. T. Foote were to the note; Brigham's name not then to it; to the best of witness's knowledge it was not when the note was before the investigating committee of the bank;" and by the testimony of Stephen Littlefield, as follows: "The name of Brigham to the note is in his hand-writing." The defendants objected to the admission of the note in evidence, but the court overruled the objection, and admitted it, and the defendants excepted.

The plaintiff then offered in evidence a check signed by Guy C. Irvine, for $18,077.07, dated 19th September 1837, to prove the money was drawn on the above note from the bank, not for the purpose of making a distinct or other liability; to the reading of which the defendants objected, but the court overruled the objection, and sealed an exception.

The plaintiff then offered Robert Falconer as a witness, who, being sworn on his *voir dire*, testified as follows: " That he is not a stockholder in the bank, but was at the time the note is dated and discounted, and was president of the bank at the time the bank suspended payment in May 1837." The defendant then proposed to ask the witness how much was discounted by the bank after the suspension, but the court overruled the question, and the defendants excepted.

The defendants then proposed to ask the same witness whether it was not understood at the time the note was discounted, that he and F. Shepard, the cashier, were to sign it before it was done, to prove the interest of the witness in this suit; but the court, considering that if received, it would not prove him interested in this suit, so as to disqualify him from being a witness for the plaintiff to recover the note, overruled the question, and the defendants excepted.

The witness was then offered in chief, to whose admission the defendants objected; but the court overruled the objection, and the defendants excepted.

The plaintiff then proposed for the purpose of showing a consideration of the note in question, to prove by this witness that this note was given to take up other liabilities of the defendants, the proceeds of which went to their common benefit; objection

[Irvine v. Lumbermen's Bank.]

was taken by defendants, which was overruled, and exception taken. The defendants further objected, having given the plaintiff notice under fifty-first rule of the court, to the paper furnished by the plaintiff. This objection was overruled, and exception was taken by defendants.

The plaintiff then asked the witness when the original discounts were made from time to time, of which this note was a renewal. Objection was taken by defendants, overruled, and the defendants excepted.

After the plaintiff had closed the testimony in chief, the defendants offered a special plea to be filed, setting forth attachments in Chautauque county, New York, against the plaintiff, and served upon N. A. Lowry and Elial T. Foote, which the court rejected, and the defendants excepted.

The defendants offered Robert Falconer, a witness called and sworn by the plaintiff, who stated on his cross-examination, among other things, as follows: " I cannot recollect positively whether my name was to or a party to the notes taken up by this note. I do not recollect that there was any understanding that I was to be a party to this note until it was brought to me to be discounted. When it was shown to me, the three first names were to it. I presume I am indebted for a part of the sum for which this note was given. It was shown me about the time it was discounted. There was no arrangement between me and the parties to the note, that I should be discharged. The cashier of the bank was also originally indebted; so was Brigham. My impression is that we were not equally liable; that one of the parties had two shares. At the time the note was shown, I have no recollection that any thing was said about Shepard or Brigham being on the note, or should be; understood distinctly for what the note was made; to take up the notes in bank given for that particular transaction. I was president and director, and Shepard cashier, of the bank at that time. Shepard was absent. Don't recollect of seeing the note until it was presented to me in bank. In a conversation with Judge Foote, about a year ago, when he was active in trying to raise the bank, he was talking with me, that I should pay my share of the note. I told him that I would not evade any responsibility. I did not tell him that my name ought to be on the note. I have no recollection of telling Judge M'Calmont that my name ought to have been on that note. I don't recollect talking to Judge Foote before an investigating committee that my name ought to have been on that note, but I acknowledged my accountability; did not offer to put my name on the note; have no recollection of ever offering to put any name on the note. Mr Shepard had at the time the note was shown gone. to New York. Understood all the defendants admitted their liability. Judge Foote offered to pay his proportion of this note to the bank since, and it was refused on the ground that by discharging him the whole

II. — 25  R

[Irvine v. Lumbermen's Bank.]

would have been discharged. Have heard Brigham admit his liability. The original discount was to pay for a purchase in which we were all interested, and continued from time to time. Have no recollection that Judge Foote said he was surprised that I had discounted that note without putting my name on it. Have no recollection that Lowry ever complained that my name not being on it was a fraud on the others," &c. They then offered in evidence by the testimony of Alexander M'Calmont, Esq., among other things, as follows: "I was present at the investigation, part of the time; it was at the time Lowry and Irvine returned certain notes to the bank, and this among them. The directors, a number of citizens, and Irvine and Lowry and Foote were present. My opinion is that Dr Foote expressed his surprise at seeing this note, and said that other names should be on it, addressing himself to Falconer. Think Mr Falconer said his name was to have been on, or ought to have been on, and he would put his name to it any time, as he was liable for one-sixth part of the note. The note was talked of again at an investigation, and he began a writing, acknowledging his liability for one-sixth part of this note. At another time, my impression is before the bringing of this suit, Mr Falconer had a pen in his hand to put his name on the note at March term 1838, but before suit brought, and Mr Thompson objected to his putting his name on. The president and cashier and board of directors present, my impression is it was at the time the notes were returned;" and also by the testimony of Robert M'Kinney, as follows: "I saw the note when Lowry and Irvine returned the notes; can't say whether in December 1837, or January or February 1838. I was one of the directors. My impression is that the four names were to it. I recollect a conversation between Irvine and Falconer about this note, but not with Foote. It was in the upper room of the bank. Irvine said to Falconer, 'you know your name was to have been on that note before it was discounted.' Mr Falconer replied, 'that is very true; my name should or ought to have been on it;'" and also by the testimony of Jeremiah C. Newman, as follows: "I was present at a conversation between Irvine and Falconer concerning the note. Irvine said to Falconer, 'he knew very well that his name ought to have been on the note before it was discounted or done.' Mr Falconer said 'he knew it had, and acknowledge myself indebted for one-sixth part of that note.' Irvine said, 'that is not the thing, you ought to have put your name on it before using it.' Falconer said he had not done it, or replied something like that. I was a director of the bank at that time." To this evidence offered by the defendants as to the declarations of the president of the bank, the plaintiffs objected, and the court overruled the evidence as a declaration of the president of the bank, and admitted it to impeach the witness, (Falconer,) but for

[Irvine v. Lumbermen's Bank.]

no other purpose; to which opinion and decision the defendants excepted.

The defendants then offered in evidence records of foreign attachments in the state of New York, and injunction mentioned in the special plea; to the admission of which the plaintiff objected, but the court admitted them, reserving the point.

The defendants then offered in evidence the record of attachment of Henry B. Van Buren and Nathaniel P. Copp. The plaintiff objected that it did not show the preliminary steps to gain jurisdiction in the cause, &c., but the objection was overruled, and the testimony received, reserving the point.

The defendants then offered the record of attachment suit of Sedgwick Benham, showing that a foreign attachment issued, and bank appeared by counsel, and judgment entered against the bank. The plaintiff objected that it did not appear by the certificate of the clerk, that " all the record is contained therein," according to the statute of that state; also that it appeared by the record itself, that the whole record was not included—not a full record— which objection was sustained, and the defendants excepted.

The defendants then offered the deposition of Judson Southland, proposing to follow it with an extract of a record of the verdict of the jury in the case of Sedgwick Benham, and the laws of the state of New York. An objection by plaintiff was sustained, except as to the laws of New York, and exception taken by the defendants. (Judson Southland was the sheriff of Chautauque county, and proved the service of attachment on Lowry, 23d of February 1838.)

The defendants then gave in evidence eight notes referred to in Mr Falconer's testimony, and offered to prove by the books of the bank, that there was a greater amount of notes issued than allowed by the charter, to show that the charter had been violated and no recovery could be had in this case—that prior to the discount of those notes, they had far exceeded double the amount of capital stock. An objection by the plaintiff was sustained and exception taken by the defendants.

The defendants then offered in evidence the bye-laws of the board of directors, to show that by them a board of directors must be present, and that there was no board of directors who permitted the discount of this note, and for that reason the plaintiff could not recover. An objection was taken by the plaintiff,— sustained by the court, and the defendants excepted.

The defendants then offered in evidence the returns of Robert Falconer, president, and F. Shepard, cashier, December 1835 and 1836, to show that at the time the present note was discounted the charter was null and void under the 10th section of the Act of 1814. The plaintiff objected, but the testimony was received, the court reserving the point.

The defendants proposed to show that in July 1836, there was

[Irvine v. Lumbermen's Bank.]

a vote of the board of directors, that the new stockholders or stockholders of the increased capital, should pay the holders of the old stock $2\frac{1}{2}$ per cent. premium. That previous to this date, the bank had declared dividends to the amount of $12\frac{1}{2}$ per cent. the preceding year, and this resolution was upon consultation as to the best mode to give the holders of the old stock a dividend without dividing with the commonwealth, as by the charter the commonwealth was to have one-half the dividends above 12 per cent. This evidence was received by the court, reserving the point.

The defendants then gave in evidence resolutions of the board of the 1st of June 1836, and 30th of June 1836, in connexion with another of the 19th of April 1836, and offered Fitch Shepard to prove that these resolutions were made to evade the Act to which they have reference. An objection by the plaintiff was sustained, and the defendants excepted.

The defendants then offered injunction from the Court of Chancery in the state of New York. An objection by the plaintiff was sustained, and exception taken by the defendants.

The defendants offered depositions taken in commission in the case of Lumbermen's Bank *v.* Nathaniel A. Lowry, No. 57 and No. 58, March Term 1838. An objection by the plaintiffs was sustained, and exception taken by the defendants.

The defendants offered to prove by the testimony of Robert Falconer, that the increased capital stock was not all paid in. An objection by the plaintiff was sustained, and the defendants excepted.

The defendants then proposed to ask this witness whether on the 19th of September 1837, the whole capital stock was paid in. The court permitted the defendants to prove that the original capital stock of the bank was not paid in, but refused the remaining part of the proposition. To this decision both parties excepted.

The court were requested by the defendants to charge the jury on the following points:

1. The paper given in evidence imports no consideration in itself, and without proof of consideration independent thereof, and for which it was given, no suit could be supported upon it.

2. The proof given of consideration, independent of the paper given in evidence, being that of a joint liability of the defendants, together with two others, Robert Falconer and Fitch Shepard, the liability is different from that declared upon, and therefore the plaintiff cannot recover.

3. If the jury believe from the evidence, that when the note or paper given in evidence, was signed by the defendants, it was the understanding of the parties that the president of the bank and the cashier, or either of them, was to sign it before it was discounted or passed, the passing of it at the bank without their signature to it, was a fraud upon the defendants, and no recovery can be had upon it.

[Irvine v. Lumbermen's Bank.]

4. That if the jury believe the testimony of the Hon. Alexander M'Calmont, Robert M'Kinney, and Robert Miles, as to the admissions of Robert Falconer, that his name ought to have been to the note, and he was to have signed it and neglected it, it is sufficient evidence of such understanding and agreement as to render him jointly liable with the defendants, and the suit of the note by the bank against the four defendants, cannot be sustained, and the plaintiff cannot recover in this suit.

5. If the jury believe from the evidence that the name of Fidelio W. Brigham was not put to the note until after it was discounted by the president of the bank, and signed to it with the same understanding that Falconer and Shepard's names were also to be on it, it is void as to him, and the plaintiff cannot recover.

6. If the jury believe from all the evidence that the resolution of the board of directors, and the written stipulations of the 17th of February 1838, contain the true argument of the parties, and Irvine complied with it on his part, it is a bar to the present suit, and the plaintiff cannot recover.

7. The records of the attachments in Chautauque county, given in evidence, of Van Buren and Copp against the Lumbermen's Bank at Warren, are evidence that whatever debt might be due from the defendants, Foote and Lowry, to the bank, at the time of the commencement of this suit, was in the custody of the law, and pledged for the use of those creditors; and if so pledged by the laws of New York, it forms an effectual bar to this suit, and until they are in some way satisfied or discharged, the plaintiff cannot recover.

8. That by a failure on the part of the bank of a compliance with the 10th section of the Act of 1814, and the 24th article of the 3d section of the Act of 1824, incorporated into the Act incorporating the Lumbermen's Bank at Warren, for the year ending the 1st Monday of November 1836, as showed by the certificate of the auditor general, the charter of the bank became forfeited and null and void before passing the note upon which the suit is brought, and therefore the transaction is void, and no suit can be sustained upon it, and the plaintiff cannot recover in this suit.

9. That by the failure of compliance on the part of the bank with the same provisions for the year ending the 1st Monday of November 1837, as showed by the same certificate, the charter became absolutely null and void before the commencement of this suit, and therefore it cannot be sustained.

10. That if the capital stock of the bank, as authorized by the Act of incorporation of the 28th of February 1834, was not all paid in before discounting any notes or issuing any of its bills, any discounts made by it afterwards are unlawful, and no suit can be brought upon any note so discounted by it.

11. That if said capital stock was not all so paid in before the

II. — R *

transaction upon which this suit is founded, the note is void, being prohibited by the 7th section of the Act of incorporation, and this suit, therefore, cannot be sustained.

12. That if the plaintiffs are entitled to recover in this suit, they can only recover the amount of cash value of the office notes of the Lumbermen's Bank at Warren, at the place and time when payable.

13. That the note or paper given in evidence is not such as the bank had any authority to deal in, and no suit can be sustained upon it.

The Court thus charged the jury:

ELDRED, President.—The defence in this case rests principally on questions of law for the court. There are some facts, however, for the jury to find, and the testimony in the case is referred to them. The defendants contend that no recovery can be had on the paper unless the plaintiffs show a good consideration for it, independent of the paper itself. It appears from the evidence that the note or writing now in dispute was discounted at the bank to take up other notes then due; and it was a renewal of discounts that commenced early in the spring of 1836. That about that time the defendants, and Messrs. Falconer and Shepard, the president and cashier of the bank, purchased certain real estate, and the original discount was for their joint concern. The notes that are renewed from time to time, sometimes had all their names to them and sometimes not; sometimes one or more names are left off, and then again others. If this testimony is believed by the jury, the plaintiffs have shown a good consideration for this note, and notwithstanding the plaintiffs have shown a joint liability of others, whose names are not on the note, it is no legal objection to plaintiff's recovery, and this is a negative answer to defendants' second point.

The defendants' third, fourth, and fifth points may be considered together. We answer that if the jury believe from the evidence that this paper was signed by the defendants, and handed to the president of the bank, or cashier, with an understanding that they were to sign it before it was discounted, and they discounted the note without doing so, it would be a fraud on these defendants, and the plaintiffs could not recover.

Mr Falconer, the president, says the note was handed him for discount, to take up other notes then in bank, without any such agreement or understanding; at the same time he admits his just liability with the others, and this is the only evidence of any agreement or understanding on the subject at the time the note was discounted; he in fact states there was no such agreement. The testimony of Judge M'Calmont and others, was only received to impeach the recollection of Mr Falconer. Suppose his evidence was successfully impeached, it would only leave the jury without any testimony further than what might be inferred from the fact

[Irvine v. Lumbermen's Bank.]

of their being all jointly liable for the debt.  They will take also into consideration, that although jointly liable, they were by no means before this uniform in all signing notes that were given in renewal of their notes.  From the evidence, it is difficult to say at what time Brigham put his name to this note; but if he did after the note was discounted, without any agreement that Falconer and Shepard should also sign it, and there is no evidence of such agreement, it would be no objection to the plaintiffs' right to recover in this case.

The defendants gave in evidence an agreement or stipulation by the bank that they would not sue Guy C. Irvine, dated 17th of February 1837, and they contend that this suit is brought in violation of that agreement, and therefore the bank cannot sustain this suit.   And this is the subject of their 6th point, to which we assent if true.   The plaintiffs in explanation of that agreement have proved by several witnesses, that the note now on trial was expressly excepted out of that agreement and stipulation.  If from all the evidence, the jury believe that this note was intended to be and was included in the stipulation, the plaintiffs should not recover, having commenced their action in violation thereof.  If, however, the jury are satisfied that this note was expressly excluded from the agreement, it is no objection to a recovery.

To the defendants' 7th point relating to the attachments in the state of New York, records of which are received here on the trial, we answer that they are no bar to a recovery in this suit.

We cannot agree to their 8th and 9th points.

To their 10th and 11th points, which relate to the original capital stock of the bank, we answer that if the capital stock of the bank was not all paid in before the transaction upon which this suit is founded, the plaintiffs cannot recover on this paper; it is altogether void, it having been discounted in direct violation of the Act of incorporation.   If the bank issued bills and discounted other notes before the capital was all paid in, but it was all paid in before the discounting the note now in dispute or the notes that were taken up by this note, it would be no objection to a recovery.

The defendants are entitled to have every exception duly considered, and the full benefit of the law, if in their favour.  Yet the objections here made, appear to come with an ill grace from them under all the circumstances.   They were the most efficient and active men in taking the stock, seeing to the money being all paid in, and putting this bank in operation, and met with the commissioners and directors for that purpose, and the only objection that can be possibly made, that the original stock was not all paid in before any notes were issued, relates to a transaction of their own.   They attempted to obviate a difficulty in relation to the stock subscribed by Gen. Irvine, of Philadelphia, who, instead of sending the money to pay for his stock, authorized a draft on him

[Irvine v. Lumbermen's Bank.]

in the city. This was not considered a payment, and Messrs Foote, Irvine, Lowry & Hall, undertook to arrange it, and they, or some one of them, drew on some bank in Buffalo for the amount, which was passed to the credit of this bank on the 27th February 1835, and this completed the payment for the whole capital stock. All the bills issued by this bank before the 27th February, were $2500, issued for the accommodation of Guy C. Irvine, one of these defendants, and a Mr Fisher; and besides, Irvine and Brigham were amongst their first directors, and continued so for a considerable time.

To their 12th and 13th points we also dissent. The defendants have received from the bank a full and fair consideration to the amount expressed in this note, payable in the office notes of the bank. This payment to the stockholders would be as good as specie, as it would enable them to pay so much of their debts, or redeem that amount of their liabilities. Does the law under these circumstances compel us to say that the debt named shall be reduced to the current value of this paper, at the time the note fell due, when it might be greatly below par, in consequence of the acts of the parties? If this were the rule, it is readily seen that great injustice might be done to the stockholders and innocent holders of this paper. It would be only necessary for a few wealthy favourites of a bank to get large discounts on time, put the paper into circulation, when to them it would be as specie. This paper the bank would have no means of meeting, and would suspend, and of course the paper would greatly depreciate; and when the debt of those borrowers came to be liquidated by the court, claim a reduction from their debt to the amount, and when thus liquidated, purchase up the paper at perhaps fifty cents on the dollar, and pay their judgment in that paper at par; this, it strikes me, would enable them to take advantage of their own wrongful acts. We do not say that any thing like this is attempted in the present case; yet we have it in evidence that Mr Irvine testified before a legislative committee, that if he (Lowry) and a few others would pay the bank, it would be in good credit.

The defendants excepted to this charge.

Verdict for plaintiffs for $20,640.42.

The errors assigned embraced all the bills of exception to evidence and charge of the court.

*Galbreath* and *Marvin*, for plaintiffs in error, in support of the special pleas in bar offered, and the effect of the foreign attachments, cited 1 *N. Y. Rev. Stat.* 764; 2 *Ib.* 377, sec. 15; 15 *Serg. & Rawle* 173; 6 *Binn.* 353; 2 *Kent Com.* 384; 11 *Serg. & Rawle* 188; 1 *Penn. Rep.* 117; 5 *Johns.* 37; 13 *Serg. & Rawle* 224; 1 *Yeates* 279; 1 *Salk.* 291; 23 *Wend.* 94; 2 *Dall.* 277; 7 *Serg. & Rawle* 182; 9 *Serg. & Rawle* 174; 4 *Watts* 414; 1 *Penn. Rep.* 117; 4 *Rawle* 111; *Clark's Chan. Rep.* 235. And on the subject of the

[Irvine v. Lumbermen's Bank.]

challenge of the juror, cited 14 *Serg. & Rawle* 292; 8 *Johns.* 347; 1 *Penn. Rep.* 443; 7 *Watts* 585; 8 *Watts* 384.

The note upon which suit is brought, is not such a contract as the bank had a right to make; it is neither a bill of exchange nor promissory note. 10 *Serg. & Rawle* 94; 4 *Watts* 400; 2 *Cow.* 664; 15 *Johns.* 383; 3 *Wend.* 482. But if the charter of the bank was forfeited before this note was discounted, then the act is void, and there can be no recovery. 2 *Penn. Rep.* 44. As to the measure of damages, this was a contract to pay notes of the Lumbermen's Bank, and the plaintiff is only entitled to recover what they were worth at the time of the trial. 10 *Serg. & Rawle* 94; 8 *Peters* 199.

*M'Candless* and *Pearson, contra.* The matter of the special pleas were only the subject of pleas in abatement, and could not therefore be pleaded in bar. 9 *John.* 221; 15 *Serg. & Rawle* 150; 17 *Eng. C. L. Rep.* 269; 3 *Rawle* 320; 5 *Johns.* 101; 3 *Johns.* 259; 4 *Cow.* 521; 1 *Penn. Rep.* 442; 19 *Wend.* 46; 1 *Yeates* 279.

The fact of forfeiture of a charter cannot be determined collaterally. 4 *Rawle* 24; 9 *Mass.* 423; 1 *Penn. Rep.* 303; 7 *Pick.* 371. As to the measure of damages, the rule laid down by the court below can do the defendants no harm, for the court have the control over the execution.

The opinion of the Court was delivered by

Rogers, J.—This is an action of *assumpsit*, to recover the amount due on a note. The defendants pleaded *non assumpsit*, and payment with leave, &c. On the trial, they offered three special pleas in bar, stating in substance that the debt, on which suit is brought, was attached by process issued out of the courts of the state of New York since the commencement of the suit, to secure the payment of several sums of money, therein mentioned, owing by the Lumbermen's Bank to citizens of said state. These pleas were rejected by the court.

The plaintiff, after exhibiting the charter and the Act of incorporation, proved the signatures of Irvine, Lowry, and Foote, three of the defendants; the witness saw the note in January or February 1838; the three names were then signed to the note, but Brigham's name was not; to the best of the knowledge of the witness, it was not to it when the note was before the investigating committee. The defendants also proved, that the name of Brigham signed to the note, is in his hand-writing. On this evidence, the counsel for the defendants objected to the admission of the note, but the court admitted it, because this is the ordinary evidence of its execution, and has always been deemed sufficient preliminary proof. If there is any thing in the fact on which stress was laid, that Brigham's name was affixed to the note after

[Irvine v. Lumbermen's Bank.]

it was discounted by the bank, it may be alleged by way of defence, but it is no reason for excluding it from the jury.

The defence rests on several grounds; and as far as I have been able to understand the case, from the confused paper-book, they may be included under the following general heads:—

The defendants insist that the plaintiffs cannot recover, 1st, Because the charter is forfeited; 2d, Because the note, on which the suit is brought, is not authorized, but is taken contrary to the Act of incorporation; 3d, For fraud; 4th, That the debt was attached under process from the courts of the state of New York; and 5th, That the court erred in the rule as to the measure of damages. These points, with some preliminary matters which form the subject of several bills of exception, and which will be noticed in the first instance, will, it is believed, embrace the whole case.

The objection to the juror. As a general rule, a juror must be superior to all exception; but this principle is not of universal application. It must not be carried to such a length as to run the risk of defeating the ends of justice, by excluding from the panel, persons who have expressed an indefinite opinion of the merits of a case, where, from the magnitude of the sum in controversy, or other incidents which may attend it, it has become a subject of general conversation. It may be sometimes difficult to find a competent juror who may not have heard something of the dispute, and who may not have expressed an opinion favourable or unfavourable on a given and partial state of facts. And this was all that was done by the juror. He never formed nor expressed an opinion as to the indebtedness of the defendants, but he had expressed one from the statement of others. He had formed no opinion as to the merits of the case, for of this, as he states, he knew nothing. It is like the case of *Donnell* v. *Master*, (8 *Johns. Rep.* 445). A juror said, "that if the reports of the neighbourhood were correct, the defendant was wrong and the plaintiff was right." This was held not to be a sufficient objection to his being sworn and impanelled. The court say, his declaration being hypothetical, it is not such a bias as ought to exclude him.

The evidence offered to prove the consideration of the note was competent for that purpose, for we cannot doubt that evidence of a joint indebtedness of six persons, would be a valuable consideration for a note given by four. Nor can the fact that there are no money counts alter the case. The cause was tried on a statement, which is intended to dispense with form; and had there been any objection on that ground, it ought to have been disclosed on the trial, when the plaintiff would have had an opportunity to amend.

There is nothing in the exception to the competency of Mr Falconer. He was not a stockholder at the time he was admitted to

testify. He is therefore entirely disinterested on that ground. Nor is there any force in the objection, that it was understood at the time the note was discounted, that he and Shepard, the cashier, were also to sign it. If he has any interest, it is rather to defeat the suit : for supposing the fact to be that he is a joint debtor, and as such bound to sign the note, he would be liable in a suit for contribution, in which the judgment here rendered, connected with proof that it was a joint debt, would be evidence. At any rate, it is a matter of indifference to him whether he remains the debtor of the bank, or becomes, as he will if there be a recovery, the debtor of the defendants for his portion of the debt. This part of the objection belongs to another portion of the case, which will be noticed hereafter. Again, if the witness violated the duty prescribed in the 20th article of the Act of the 25th of March 1824, as is alleged, —which has been urged as an argument against his competency— he is liable, in his individual capacity, to pay the amount of the excess of discount, to any person or persons, holders of the notes of the bank, or having a claim for a deposit to an equal amount, who shall first sue for its recovery. He is in no way liable to the bank, nor to the debtors of the bank, and the most that can be made of it is, that if this money be recovered, it increases the funds of the bank, and consequently there would be less necessity for the depositors and note-holders to resort to the extraordinary remedy by suit against the delinquent directors. But this is a contingent liability merely, which has never yet been held cause for the exclusion of a witness, although it may be urged with some force against his credit.

Having disposed thus briefly of the preliminary matters (in none of which have I been able to discover any cause for the reversal of the judgment) I shall now consider the remaining objections in their order :

1. And, first, the forfeiture of the charter. The alleged delinquency of the bank consists in this : a failure of the bank to comply with the 10th section of the Act of 1814, and the 24th article of the 2d section of the Act of the 25th of March 1824; the allegation that the capital stock of the bank, as authorized by the Act of Incorporation of the 28th of February 1834, was not all paid in, as is directed by the Act, before discounting any note or issuing any of its bills; and that the capital stock was not all paid in before the transaction on which this suit is brought. The Act of the 25th of March declares the charter of a bank, neglecting to pay or declare dividends, absolutely null and void, and of no. effect whatsoever; and that the bank from thenceforth shall be deemed and taken as dissolved, unlawful, and unincorporated. The 7th section of the Act incorporating the Lumbermen's Bank, also declares that no discount shall be made, or any note issued by the bank, until the whole of the capital stock shall be paid in. These prohibitions and restrictions are very positive, and expressed

[Irvine v. Lumbermen's Bank.]

in strong language; and if the bank has omitted or neglected to comply with them, and the proper steps had been taken, the charter would have been declared by the proper authority null and void. But the difficulty which meets the defendants, is, that we cannot judicially know, nor can we now investigate the truth of these allegations; for if there be anything settled beyond all cavil and controversy, it is, that the violation of a charter of incorporation cannot be made the subject of judicial investigation in a collateral suit. The only evidence, competent to prove the forfeiture of a charter, is the judgment of a court directly on the point; and no inferior evidence can be admitted for that purpose, unless it is otherwise directed by the legislature in express and positive terms. The objection comes with a peculiar ill grace from the defendants, some of whom were directors of the institution, and all of whom received and used the funds of the bank, of which they now wish to deprive the innocent stockholders, and the honest creditors, under this flimsy pretext. The provisions for a forfeiture of the charter are not intended for the benefit of the debtors, to shield them and enable them to commit a fraud: but it is designed to protect the public; for notwithstanding the 10th section declares, that in certain cases the charter shall be absolutely null and void, yet it also provides that the bank shall be liable in its corporate capacity, for the fulfilment of all its contracts, &c., previously made, and shall be capable of compelling the fulfilment of any contract entered into previous to the delinquency. So in the 20th article of the 3d section of the Act of 25th of March 1824, it is provided that the Act shall not be so construed as to prevent the bank from recovering the notes or obligations of those who may be indebted to it as occasion may require. For the purpose of collecting its debts, the charter is still in existence, notwithstanding it may be forfeited on account of the delinquency or neglect of its directors; and this principle must be engrafted into every Act of incorporation, to prevent the most monstrous and glaring injustice to creditors and stockholders. If the charter had been regularly forfeited, a question of some delicacy on the wording of this Act would have arisen; that is, whether any debts, contracted after this cause of forfeiture, could be recovered. We are, however, happily relieved from a consideration of that point, because, as the case stands, the question cannot arise.

2. Second point. Because the note is not authorized, but is taken contrary to the Act of incorporation. The note being made payable in the *office notes of the bank*, is said to be contrary to the 14th article of the Act of the 25th of March 1824, which prohibits corporations, either directly or through the agency of others, either in trust or confidence, to deal or trade with any profits, stock, money or effects of the bank, in buying any goods, wares, or merchandise whatever; that corporations shall not deal nor trade

[Irvine v. Lumbermen's Bank.]

in any thing, but bills of exchange, gold or silver bullion, and in stock and treasury notes, or in the sale of goods really and truly pledged for money lent and not redeemed in good time, or goods which may be the produce of their lands.    This Act must receive a reasonable construction, and the intention of the legislature is manifest: it is to prohibit the banks under the pretence of loaning money, from becoming dealers, traders and merchants, and thereby interfering with the legitimate pursuits of individuals.    In this view, the restriction which confines them to buying and selling certain things enumerated in the Act, is highly salutary and conservative.    In neither of these characters is the bank exhibited. It would be an abuse of terms to call them in this respect dealers, traders, or merchants.    There is nothing in the transaction which interferes with the policy which dictated the restriction.    The legislature never could intend, under the penalty of a forfeiture of the debts, so great an absurdity, as to prohibit them from expressing on the face of the note that which is a necessary implication from the law itself; for it cannot be doubted that it would be a palpable breach of law and of good faith, if the bank were to refuse to receive its own notes in payment of debts.    It is intended that the issues in the shape of notes shall be a substitute for specie, which they would not be, unless receivable by the institution by whom they were issued.    Nor can I perceive in what way notes made payable in this form can be made to operate to the injury of depositors or other creditors.    By these means the indebtedness of the bank to the holders of their notes is discharged, and the liability of the bank is decreased in the same proportion, leaving the other funds applicable in liquidation of debts.    We must not confound the negotiability of the paper with the liability of the defendants.    The questions are entirely distinct, for the note may want the character of negotiability, and yet the plaintiff may have a perfect right to sue and recover the amount expressed on its face. There is nothing to prevent the institution from taking any form of security it thinks best, whether a note under seal, bond, mortgage, judgment, or what is most usual, negotiable paper, payable to bearer or order, and transferable by endorsement or delivery.

3. The third point is the alleged fraud.    And this is included in the answer to the third, fourth, and fifth points of the defendants. From the imperfect manner in which the case is presented, it is difficult to understand precisely the nature of the testimony on the points themselves; but from the best consideration I have been able to give it, it seems to me that the answer of the court is as favourable to the defendants as they had any reason to expect. The court say that if the jury believe from the evidence that the paper was signed by the defendants, and handed to the president and cashier with an understanding that they were to sign it before it was discounted, and they discounted the note without signing it, it would be a fraud on the defendants, *and the plaintiff*

s

[Irvine v. Lumbermen's Bank.]

*could not recover.* This, I say, was as favourable to the defend-
ants as they had any right to require; for it may be doubted whether,
admitting the fact to be as stated, the court was right in declaring
to the jury that the *plaintiff could not recover.* It is not very clear
that an understanding between the parties themselves, although one
was president and the other cashier, would avoid the note unless
knowledge of that understanding was brought home to a quorum
of the directors, whose duty it is to discount notes. If it would,
it puts the bank very much in the power of one or more fraudulent
directors. It is a breach of faith, to be sure, among themselves,
but from this it does not necessarily follow that the security is
void, operating as it would in this case to the injury of the inno-
cent stockholders and creditors. But be this as it may, there was
no evidence of any such understanding. The note was handed to
Falconer for discount, in renewal of other notes then in bank,
without any agreement or understanding on the subject. The
testimony of Judge M'Calmont and others was only admitted to
impeach the recollection of Falconer, who was examined as a wit-
ness; and supposing that the defendants had been successful in
this to the utmost extent, it would leave the jury without any tes-
timony further than the inference which may arise from their
joint liability. Sensible of this consequence, the defendants take
the ground that under the circumstances the onus is thrown upon
the plaintiff. They contend that the bank must show negatively
that there was no such understanding between the parties as that
Falconer and Shepard were to sign the note which was given in
renewal of notes on which they were joint debtors. Even if this
were required, there is negative evidence in the testimony of Fal-
coner. But I will not rest the case on that point, for I cannot
agree that the onus is thrown upon the plaintiff. The allegation
amounts to a charge of fraud, which cannot be presumed, but
must be proved. In support of this charge, the defendants must
show in substance that discounting the note in that manner was
in contravention of an express agreement, and that the bank par-
ticipated in the fraud committed by two of the debtors, in omitting
to sign the note before it was discounted.

But the bank had nothing to do with their private arrangements.
All they were required to attend to, was to have an adequate
security for the money loaned; and they were not bound to sus-
pect a fraud merely because the names offered in renewal of the
note were different, at different times. There is truth in the ob-
servation of the court, that it is difficult to say at what time Brig-
ham put his name to the note; but even admitting that he signed
his name after it was discounted, it would be no objection to the
plaintiffs' right to recover. It was ratified by the bank and by
Brigham, and surely the others have no right to complain of an
act which adds to their security. It is impossible to avoid seeing
that if there has been any fraud or misunderstanding in the last

[Irvine v. Lumbermen's Bank.]

renewal, it has been among the debtors themselves; but this ought not to operate to the injury of the bank. The transaction seems to have arisen from a joint purchase of real estate. The note was discounted to pay purchase-money originally on their joint account. It was renewed from time to time, sometimes with all their names, sometimes with one, and sometimes with two or more of these joint debtors, as suited their own convenience, they having mutual confidence in each other. What is there in this state of things to lead the plaintiffs to suspect that there was any thing unusual or unfair in the last renewal, merely because certain names were then omitted? And why should they be visited with a loss which has arisen, if at all, from the loose manner in which the defendants themselves have chosen to transact the business? We cannot help perceiving that this is a mere subterfuge to escape the payment of an honest debt. I have also to add, that if the defendants have been wronged, it has been by the jury, and this is not the proper mode for them to obtain redress.

4. Next, as to the effect of the attachments. The defendants, on the trial of the cause, offered special pleas, purporting to be in bar, setting forth that Sedgwick Benham, of the county of Chautauque, in the State of New York, sued out an attachment according to the statutes of that state, against the Lumbermen's Bank, being a foreign corporation, for the sum of $1473, a debt due from the plaintiff to Benham, and attached the debt of the bank against the defendants. Also, an attachment in favour of Henry B. Van Buren, against the same, for a debt of $1200, and in favour of Nathaniel P. Copp, for a debt of $1750. These pleas were rejected, but on the trial the two last were received in evidence, reserving the point: and the first, viz. the attachment in favour of Benham, was rejected, and rightly, because it appeared that the certified copy did not contain the whole record. The debt in suit was attached by the sheriff of Chautauque county, the 22d of February 1838, which was before the commencement of this suit.

By the inventory attached to the sheriff's return, it appears that this debt was attached in the following manner. After stating other property, consisting of notes, &c. belonging to the bank, the sheriff says, " And also, that on the 5th day of March aforesaid, I notified Nathaniel A. Lowry, by leaving at the store of the said Lowry, in the village of ———, a notice, written, that I had the annexed attachments, and by virtue of the said attachments, made a demand of him of a list of his indebtedness to the Lumbermen's Bank at Warren, Pa., which was not furnished." For the purposes of this case, I shall assume that under the statute law of New York a debt due from a foreign corporation to a citizen of that state, coming under the denomination of personal property, may be attached, and that this debt was attached under the process issuing from regular and competent authority. But although these facts are conceded, yet, it nowhere appears that

[Irvine v. Lumbermen's Bank.]

any more was done under this process.   There was no execution executed, nor was there, so far as appears, a judgment rendered by the court in favour of the attaching creditors against the bank. *Vide* 24th *section Revised Statutes of New York* 460.   All that was done was to file the affidavit of the debts, and to give the bonds which are required by the Act.   The sheriff has now, under his control, and in his custody, all the effects of the bank, attached by virtue of the process in his hands.   This is, therefore, a foreign attachment pending, *lis pendens*, without execution executed, and without a judgment rendered for the debt.   And the questions arise,—Is this a defence to a suit subsequently commenced in this state? and if it be, in what manner must the defendants avail themselves of the defence?   That the proceedings in New York are a defence in this state, admits not of doubt.   They are a defence to the same extent, and must be pleaded in the same manner as if they had been laid in this state, there being a manifest distinction between a suit pending in a foreign country, between the same parties, commenced by process against the person, and a proceeding by process of foreign attachment, which acts *in rem.* The latter may be pleaded either in abatement or in bar, according to the distinction which will be hereafter noticed; whereas the former can neither be pleaded in abatement nor in bar, unless perhaps where the cause has proceeded to judgment.   *Vide note to* 4 *Cow. R.* 521, where all the authorities are collected.   *Sed quære.*   Whether upon the principle of comity between sister states, and convenience, the pendency of a personal action may not be pleaded in abatement.   Can it be that a suit for the same cause of action, between the same parties, can be carried on at the same time in every state in the Union?   This, however, is not the point in difficulty, but the doubt is, whether it must be pleaded in abatement, or may be pleaded in bar, or given in evidence under the general issue.   The attachments which were given in evidence, as has been already observed, were sued out on the 24th of February 1838, previous to the commencement of this suit.   There was no execution executed, there was no judgment rendered.   The proceedings amount to a foreign attachment pending, which is pleadable only in abatement.   If, after a foreign attachment has been issued, and been executed in the hands of a garnishee, the original creditor sues the garnishee for the debt, he may plead the attachment in abatement.   But if the plaintiff in a foreign attachment has obtained judgment against the garnishee and received the money, or execution has been executed, and the original creditor shall afterwards sue the garnishee for the debt, he may plead the condemnation in the foreign attachment, and this will be an effectual bar for the amount.   If the judgment in the attachment is equal to, or exceeds the amount demanded from the garnishee on the original debt, it is a flat bar; if for less, it is a bar *pro tanto* only.   *Fitzgerald* v. *Caldwell,* 1 *Yeates* 279; 17

*E. Com. L. R.* 269; 5 *Johns. R.* 101; 3 *Rawle* 320; 9 *Johns. R.* 221; 1 *Penn. R.* 442. And the distinction between pleas in abatement and in bar, is not technical, but necessary to prevent injustice. Where pleaded in abatement, after the disability is removed by disproving the debt, as may be the case, the plaintiff may renew his suit; but if pleadable in bar, this cannot be, and the plaintiff may be exposed to have the claim of the attaching creditors defalked, although it may be afterwards disproved, and the garnishee may be allowed for a debt which he may fail to pay. The plaintiff may be defalked and afterwards compelled to pay the attaching creditors the amount of their debts, for an attachment without satisfaction would not of itself prevent them from resorting to their original debtor.

If, then, this was pleadable in abatement, the court were right in rejecting the special pleas in bar, which, although concluding in bar, disclosed matter pleadable in abatement only. So, matter pleadable in abatement cannot be given in evidence under the general issue, nor can it be pleaded after a plea in bar. 2 *Serg. & Rawle* 537; 15 *Serg. & Rawle* 150; 4 *Cow. R.* 521.

But it is contended that a plea in abatement was not the proper plea, because the defence being for part only, the writ cannot abate in part. The argument is, that if pleadable at all, it must be pleaded in bar; because the defence is to part and not to the whole. And it is very true, that where the judgment and execution are for a sum less than the plaintiffs' demand, it may be pleaded in bar; and the defence is *pro tanto* only. 1 *Com. Dig.* 585; *Dyer's R.* 83; 1 *Sid.* 327. But the fallacy of the argument consists in this. It is a misapprehension of the fact to suppose that part of the debt only was attached; on the contrary, the whole debt, together with other assets, was attached by the creditors in New York. Although the amount due the attaching creditors, on their own showing, was less than $3000, they have attached a debt due the bank of upwards of $20,000. Nor has the bank any reason to complain of this, as, to say the least of it, it may be doubtful, under the statutes of New York, whether the sheriff would be justifiable in attaching part and not the entire debt. At any rate, he has not thought proper to attach part, but has attached the whole debt. The sheriff to whom the process is directed in the case of a foreign corporation, is bound to proceed, in all respects, in the manner prescribed in the case of attachments against absent debtors. 21*st section Revised Statutes of New York* 460. And in case of absent debtors he is directed to attach all the real and personal estate of the debtor, and to take into his custody all the books, accounts, vouchers, and papers relating to the property, credits, and effects of such debtor. The sheriff would seem, therefore, to have no discretion, and this would appear to have been his own understanding of his duty. He must take into his possession all the property of the bank in his bailiwick, with-

[Irvine v. Lumbermen's Bank.]

out any regard to the amount of the debt against the bank, or the value of the property attached. The defendant had a complete defence, by a proper plea, which, if pleaded, the whole writ would abate; but, not having thought proper to avail himself of this plea in proper time, he shall not now be permitted to retrieve the slip in pleading after a plea in bar; nor can he have the advantage of it on the general issue. We cannot, therefore, perceive any error in the negative answer of the court to the defendants' seventh point.

5. It only remains to consider the rule as to the measure of damages. On this point we agree with the Court of Common Pleas. The correct rule is, the cash value of the note at the time it is payable; but what is the cash value as between these parties? If the defendants had performed their part of the contract by payment of the note at its maturity, who can doubt that it would have been equal to specie to the plaintiffs? It would have enabled them to pay so much of their debts, or redeem that amount of their liabilities, which otherwise they might be compelled to pay in specie. The defendants have expressed some apprehension that after judgment they may be required to pay in specie; but this is a groundless fear; for, as the court have control over the execution, they will, under their equitable powers, take care that no injustice be done.

Judgment affirmed.