# THE LEGAL CHRONICLE.

## SATURDAY, JANUARY 18, 1873.

*Twenty-sixth Judicial District.*

## In the Court of Common Pleas of Wyoming County.

## THE LYCOMING FIRE INSURANCE COMPANY
## v. H. NEWCOMB.

1. Authority granted by an act of Assembly to an Insurance company to loan its money, and improve its profits in the purchase of mortgages and stocks, is not a discounting privilege within the meaning of the 25th section, article 1st, of the constitution. The word "discounting," as used in that section, is to be understood in its banking sense, and is confined to dealing in promissory notes and negotiable paper for less than par value.

2. Inquiry cannot be made in a collateral suit as to whether a corporation has forfeited or misused its franchises.

3. A mutual fire insurance company, incorporated in 1840, was authorized by an act of Assembly passed in 1861, to make insurances for cash premiums. *Held*, that the latter act is valid against all persons who became members of the corporation after its passage. Insurance Company v. Ruch & Evans, 4 Legal Gazette 182, approved.

4. Members of a mutual insurance company cannot set up as a defence against the payment of assessments upon their premium notes, for the purposes of paying losses, any delinquencies or failures to perform duty on the part of the officers of the company. They may call their officers to account, or restrain them by proceedings in equity from doing acts to their prejudice contrary to law. If they fail to do this, creditors have the right to hold them as having acquiesced in the management.

5. Insurances effected out of the State are as binding contracts as those within the State.

6. Where the risks taken by a mutual insurance company are so great that the premium notes held by it exceed five millions of dollars, and the losses monthly on an average amount to forty thousand dollars, the court in which the judgment has been entered on a premium note given by a member will not direct an issue to ascertain whether the per cent. of the assessment made by the directors to meet losses, might not be reduced a fraction below that laid. Insurance Company v. Lauffer & Hunt, 4 Legal Gazette 153, cited and approved.

**Motion for a rule to show cause why judgment shall not be opened and execution stayed.**

Opinion delivered 18th November, 1872, by

ELWELL. P. J.—The plaintiff is a mutual fire insurance company, with authority to make insurance for cash premiums at its discretion. It was incorporated by an act of Assembly passed on the 20th of March, 1840—authorized to obtain a lien upon property insured by filing a memorandum of the premium note and description of the property in the prothonotary's office by an act passed July 26th, 1842—its charter extended and made perpetual by an act of the 29th of March, 1854, and authority obtained to make insurances for cash premiums by an act passed first day of May, 1861.

The affairs of the company are, according to the act of incorporation, managed by a board of directors elected by the members thereof. Every person insured upon the mutual plan, upon giving his premium note for the sum of money determined by the directors, thereby becomes a member of the corporation, with the right to vote for directors, and also other privileges enjoyed by stockholders in corporations generally.

On the        day of August, 1867, the defendant effected an insurance for five years on his buildings situate in Wyoming county, and gave his deposit note, by which, in consideration of the policy issued to him, he promised to pay to the treasurer of the company the sum of $234, in such portions and at such times as the directors of said company may, agreeably to their act of incorporation, require during the validity of said insurance.

The act of incorporation provides, that deposit notes "shall be payable in whole or in part, at any time when the directors shall deem the same requisite for the payment of losses by fire, and such incidental expenses as shall be necessary for transacting the business of the corporation." The losses are to be ascertained by the directors, who are to determine the sums to be paid by the several members as their respective portions of losses, which sums are required to be in proportion to the amount of the original deposit note of each.

On the 10th of October, 1871, the directors made an assessment of 12½ per cent. on the premium notes which form the capital stock of the company in connection with the cash premiums received. These notes, it would seem, are to the amount of about $5,300,000, as they raise, at the above per cent. the sum of $662,496.50.

No complaint is made by the defendant that he has not been duly notified of this assessment ; as he objects to it on other grounds it is to be presumed that the required notice was given. In the affidavit upon which this motion is founded, he alleged that he has a full defence against the payment of any part of this assesment upon grounds which I will now separately state and consider.

*First.* He alleges that this company claims to exercise discounting privileges, and therefore has no right to demand money of him for any purpose.

There is no attempt in the original charter or any of its supplements, to confer discounting privileges ; on the contrary, when the charter was renewed in 1854, it was expressly provided that the corporation should *not* exercise banking privileges. The authority conferred by the acts of 1840 and 1861, to loan its money and to improve it and its profits in the purchase of ground rents, or mortgages, or bank stocks, or stocks of the United States, or this State, is not a discounting privilege within the meaning of the 25th section of article 1 of the constitution. The word

"discounting," as used in that section, is to be confined to dealing in promissory notes, bills of exchange or negotiable papers, for less than their face.    Schober v. The Accommodation Saving Fund, 11 Casey 225.

In The Building Association v. Sermmiller, 15 Legal Intelligencer 132, in note to the case cited above, it was said by SHARSWOOD, P. J., that, "The constitution connects together banking and discounting, and it is evidently in the sense of bank discounts that the latter word is used.    *    *    *    To construe it in any other than its banking sense would be to say that no corporation   *   *   *   can make an investment in stocks, loans, or any species of security having a par or nominal value at less than such par value."    The business aimed at, he says, was bank discounts and "not the investment of money by religious, literary, charitable, *insurance*, saving, mining, or other corporations, in stocks, loans, bonds, mortgages and ground rents at less than their par value."    The power granted to this corporation to invest its funds in the manner mentioned, cannot be tortured into legislative authority to do that which the Legislature had no power to grant, and which in the renewal of the charter, it had expressly withheld.

But the defendant alleges that the company has exercised discounting privileges, and thereby has forfeited its charter rights.    Upon this motion we are to consider the defendant's affidavit as absolute verity as to all matters set out with certainty and clearness !    But if the facts set up by him would not amount to a defence if sued upon his note, surely we ought not to open this judgment, regularly entered under the law and his contract, to permit him to make proof of such facts. `

It is settled beyond controversy, that the violation of the charter of a corporation cannot be made the subject of judicial investigation in a collateral suit.    Angell and Ames on Corporations, 636 and note.    Irvine v. Lumberman's Bank, 2 W. & S. 190.    Dyer v. Walker, 4 Wright 160. If an affidavit of defence to an action upon a note given or endorsed to a corporation, alleges a specific improper act that would work a forfeiture, the plaintiff is entitled to judgment for want of a sufficient affidavit of defence.    Coil v. The Pittsburg College, 4 Wright 445.    Sparhawk v. Union Passenger Railway Co., 4 P. F. Smith 453, per WOODWARD, C. J.

The objection that money has been made and received into the treasury by an illegal act of the corporation, comes with an ill grace from a member, especially when, if successful, the effect would be to deprive honest creditors of their just due.

It is a maxim of the law that "no man shall be permitted to take advantage of his own wrong."    It is also a maxim that what one does by another he does by himself.    It follows that by setting up what is alleged as the illegal acts of the directors, the defendant interposes his own wrong as a defence.    It cannot avail him.

*Second.* The defendant alleges that the act of 1861, which authorizes insurances for cash premiums is not a constitutional law, and therefore members insured on the mutual plan are not liable to contribute to the payment of losses sustained upon policies for which cash premiums have been paid.

We have already considered that part of the act of 1861, which relates to the loaning of its money not immediately needed to pay losses, and find nothing which, in any manner, infringed upon the constitution. So far as regards persons becoming members of the company after the passage of that act, it is to have the same effect as if it had formed part of the original act.

The reasoning of Judge Walker, and the authorities cited by him in The Lycoming Insurance Company v. Ruch & Evans, 4 Legal Gazette 182, are, to my mind, conclusive as to the validity and binding force of the supplement. He says: ''The cash branch was a privilege conferred upon the corporation by the act of 1861 ; it was so regarded by them, for it reduced the assessments of members. It can scarcely be considered as a departure from the object of their corporation, for it has been successfully engrafted upon the mutual system in Massachusetts, and other States for years, and the decisions of the courts have, again and again, sustained the practice of assessing premium notes to pay losses on cash or stock policies. Confer v. Shaver, 41 Barbour 151 ; New England Mutual Co. v. Belknap, 9 Cush. 104.

*Third.* The defendant objects to paying the assessment No. 29, made by the directors ; because, as he is informed, they made stock insurances without having provided a table of rates. When there is a regular and valid judgment entered of record, in the manner provided by law, as in this case, it ought not to be disturbed upon an affidavit which alleges merely that the defendant is informed of a fact. By whom, and in what manner was the defendant informed ? What means had the informant to obtain his knowledge ? Was it mere hearsay, or did it come directly from the company ? There was no occasion for the defendant to speak from information merely. He is a member of the company, and has the right of access to the books at all times. But the failure of the directors to perform a duty does not discharge the members from paying their share of the capital stock. It would be no defence in an action by a holder of a stock policy to recover for a loss that no table of rates had been fixed before the policy was issued. The company could not receive the premium, fix the special rate at the time of insurance, and afterwards decline to pay a loss because they had not fixed the rate under some general rule established at a previous time. It would be a more startling doctrine to be held by the courts that the insured must, at their peril, see to it that the officers of an insurance company perform all their duty. The members

of the company must be presumed to have had knowledge as to the manner in which this business was conducted. It is not competent for them now, after transacting business for ten years, and receiving large sums of money as cash premiums, to pick flaws in their mode of doing that business and thereby shirk responsibility voluntarily assumed. It must be borne in mind that those who are insured in the mutual department are members of the company, while those who are insured for cash premiums are not. For any dereliction of duty on the part of the officers, the *members* may call them to account, and if they are proceeding contrary to law, or to their prejudice, they may apply, by bill, to the courts, and restrain them by injunction. If they fail to do this, they must be held to have acquiesced in the act. Such must be the rule as between the creditors of the corporation and its members. Otherwise it is wholly unsafe to rely upon the promise of any corporation.

*Fourth.* The defendant further alleges that the assessment, No. 29 was not needed to pay losses for which the company was liable, and that there was, at the time it was laid, a large unexpended balance on hand.

This objection of the defendant must be considered rather as a reason why execution should not be issued than why the judgment should be opened. The act of 1842 provides for the entering of judgment for the *whole* amount of the premium note, and for the issuing of executions thereon for sums due and demandable upon the filing of a statement of receipt and disbursements accompanied by an affidavit of the treasurer.

Assessment No. 29 was made on the 10th October, 1871. At that time losses had occurred on cash policies by the great fire in Chicago, a few days before, to the amount as estimated, of $450,000. There were also, as appears by the treasurer's sworn statement of record, unsettled claims, exonerations upon assessments to be made, and commissions to be paid, amounting to $158,852.62. These two items should be considered in the light of a debt to set off against the amount to be raised by an assessment. Together they amount to $608,852.62. To meet this there was a surplus amounting to $84,617.58. In stating amounts which constitute this surplus, it appears that more than $65,000 was then due from agents. If that sum was not immediately available, there was actually in the treasury only the sum of $19,097.77. The amount, in that case, *immediately* to be raised to meet present demands, was $589,755.29, or about 11 per cent. on the premium notes. If the whole surplus first above stated be considered as cash in hand, then about 10 per cent. was required.

But it is objected that the Chicago losses ought not to be paid because the property insured was out of the State. There is no force in this point. A corporation may bind itself by contract made out of the State as well as in.

There was, then, actual necessity for raising by assessment, more than half a million of dollars.   In the exercise of the discretion committed to the directors by the law, and by the terms of the contract with the several members, they levied 12½ per cent. upon the capital stock, which is prob- ably about 1½ per cent. more than was needed at the *moment* of the assessment.   Possibly it may have been two or two and a-half per cent. more ; but if it were even the latter, ought we to restrain the direct- ors in this summary and collateral way from collecting the sum assessed ? I entirely concur with Judge Logan in the case of this same company v. Lauffer, Hunt & Co., 4 Legal Gazette 153, where he says : "It would be vexatious and bothersome, if, upon the collection of every assessment, there should arise, and be entertained, an inquiry and an adjudication of the partnership equities of this company ; or, what is equivalent, an inquiry into the wisdom and propriety of the exercise of a vested discretion in- volving an examination of all the multifarious operations of the company."

If the purpose of the assessment was to pay losses for which the com- pany were not liable, or to create a fund for any improper purpose, an injunction would undoubtedly be issued by a court of equity upon the filing of a proper bill to restrain an act so prejudicial to parties interested, and this would be the appropriate remedy in such a case.   But, surely, in a case where the risks taken by an insurance company are so great that the premium notes exceed $5,000,000, and the losses monthly, on average, amount to more than $40,000, the court in which a premium note is en- tered will not feel called upon to direct an issue to ascertain whether the per cent. of the assessment might not be reduced a fraction below that laid.

When a defendant has given a warrant of attorney to confess judg- ment, and judgment has been entered thereon, and he comes to the court asking relief, and appeals to the sound and reasonable discretion of the court, he ought to be able at least to show that he will sustain a wrong and injury unless the relief is granted.   Does the defendant present such a case ?   We have seen that he is fairly and unquestionably liable to pay his proportion of the losses up to the time of the assessment.   This policy expired in August, 1872, some ten months after the assessment.   In that time the losses, according to the general average, would be some $400,000, which is more than four times the amount of the surplus on hand at the time of the assessment.   In ordinary times the annual assessment amount- ed to three per cent. per annum.   In the absence, therefore, of any other fact than that stated in the affidavit, that the assessment raises a "large surplus" without showing that he is thereby injured, he cannot call for relief at the hands of either a court of law or equity.

But, lastly, he alleges that the statement of receipts and disburse- ments filed in the case under the oath of the treasurer "is imperfect, and, as he believes, false and untrue."

I am unable to discover wherein this statement is imperfect. It contains the amount of premiums received, and states the manner in which the money of the company has been expended, which is a literal compliance with the act of 1842.

Required, as it is, by the statute, it is *prima facie* evidence of the facts it contains. It can not, therefore, be met and overthrown by an affidavit that it is "false and untrue." The part wherein it is false must be particularly pointed out before the court can direct an investigation in regard to it. In an attempt to open a judgment on the ground of fraud in obtaining the instrument upon which it was entered, the court would not grant a rule merely upon an affidavit that it was obtained by fraud, the particulars would be required. The reasons for so requiring apply with full force to this case.

Upon careful consideration and full examination of the facts set up by the defendant, I am satisfied that they would not avail him as a defence if we should open the judgment. I am also satisfied that he will not be injured by allowing the execution to go for amount of assessment due by him.

Motion overruled and order for stay of execution annulled.

*B. W. Cumming* and *W. M. & James W. Piatt*, for plaintiff.
*Little & Sittser* for defendant.—*Legal Gazette.*