# Western Pennsylvania Railroad Company's Appeal.

1. In a proceeding in equity by one railroad company, to restrain another company from crossing the tracks of the former at grade, the complainants cannot avail themselves of the fact that the defendants have, by their laches, allowed a third company to build its tracks over that portion of the chartered route of the defendants, intended to be occupied by them after making said crossing.

2. The Act of June 19th 1871 (P. L. 1361), enables a private citizen, by bill in equity, to call upon a corporation to show, by its charter, that it has the power to do a certain act; or, on the other hand, the complainant may show, from the said charter, that powers once possessed by the defendant corporation, have been forfeited by lapse of time or otherwise. But the Act does not authorize investigation, by such citizen, into causes of forfeiture, other than those which may appear from the conditions and limitations of the charter.

3. The said Act contemplates nothing more than that it shall be made to appear from the charter that the corporation has the power to do an act in question, which involves some right of the complainant. It does not authorize a private citizen to assume the position of the Commonwealth, as, in a writ of quo warranto, and to prove the mere non-user of a franchise, in order to establish a forfeiture of the corporation's right to act under its charter. The right to establish a forfeiture for such reason rests wholly with the state.

October 25th 1883. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and CLARK, JJ. GREEN, J., absent.

APPEAL of the Western Pennsylvania Railroad Company, and the Pennsylvania Railroad Company, lessee, from a decree of the Court of Common Pleas No. 1, of *Allegheny county:* In Equity. Of October Term 1883, No. 56.

Bill in equity, filed June 25th 1881, by the Western Pennsylvania Railroad Company and the Pennsylvania Company, complainants, against the Evergreen Railway Company, defendants, to restrain the latter company from constructing its tracks at grade over the tracks of the Western Pennsylvania Co., at Bridge street, in the borough of Millvale, Allegheny county, or if the Evergreen Co. possesses that right, then to regulate the terms and conditions of such crossing.

The defendants filed an answer and the cause was referred to W. B. Rodgers, Esquire, as Master and Commissioner, who reported the facts as follows: "The Western Pennsylvania Railroad was constructed about the year 1866, from the city of Allegheny to Blairsville, in Indiana county. The road passes through the borough of Millvale, crossing Bridge street at grade with two main tracks and three side tracks, running into Bennett's Mill. Bridge street is one of the main streets of the

borough; is 45 feet wide, and runs from the Allegheny and Butler turnpike to the Ewalt street bridge, leading to the city of Pittsburgh.

The Lawrenceville and Evergreen Passenger Railway Co. was incorporated by Act of 13th May 1871, P. L. 850, with power to construct a railway, commencing at the corner of Forty-third street, formerly Ewalt street, and Butler street, in the city of Pittsburgh; thence along said Forty-third street to the Allegheny river; across the said river by the Ewalt street bridge, if the railway company should get the consent of the Bridge Company, to the Allegheny and Butler road; and thence to Evergreen hamlet, in Ross township : " with the right to go by and upon any public road now opened or which may hereafter be opened to said Evergreen hamlet," with power to pass over and across any other railroad at grade. By supplement of March 9th 1872, P. L. 290, the company was authorized to extend its road from the Evergreen hamlet terminus, and was granted in locating, constructing and operating its road, all the powers and privileges of the Act of February 19th 1849, regulating railroad companies, and the supplements thereto. The name of the corporation was afterwards changed from the Lawrenceville and Evergreen Passenger Railway Company to the Evergreen Railway Company.

In pursuance of this legislation, the company in 1872 and 1873 constructed a narrow gauge railroad from Bennett station in Millvale, a short distance north of the Western Pennsylvania Railroad, to Evergreen hamlet, a distance of three miles, and operated the same between those two points with steam power, from and after the completion of the road, in November 1873. After the construction of the road as stated, no extension toward or into the city of Pittsburgh was made or attempted until shortly before the filing of this bill.

Matters remained in this situation until April 14th 1881, when, and at subsequent dates, application was made to officers of both the complainant companies by the Evergreen Company relative to a grade crossing, but nothing resulted. The Evergreen Company then filed a bond in order to effect the grade crossing. The complainants then filed this bill, and a preliminary injunction was granted.

The Evergreen Company is now extending its road from the Evergreen hamlet terminus, and desires to lay a single track narrow gauge road along the western side of Bridge street, from the present terminus of its road to the Ewalt street bridge. The present Ewalt street bridge structure is unfit for use by steam power, and could not safely carry more than eight tons. The grade of Forty-third or Ewalt street, in the city of Pittsburgh, is such that it would be difficult to operate a rail-

road upon it with steam power. The consent of the councils of the city of Pittsburgh or those of the borough of Millvale to the occupation of their streets by the Evergreen Company has not been obtained, nor under the charter of the company is such consent necessary.

The Evergreen Company desires to cross at grade at Bridge street, and denies that any other method of crossing is reasonably practicable. The Western Pennsylvania and the Pennsylvania Railroad Company, the plaintiffs, contend that an overhead crossing is reasonably practicable, and have proposed two overhead crossings, one being along Grant avenue and Bridge street, and the other what is called in the testimony the circular route.

It also appeared that by an ordinance of the city of Pittsburgh passed February 7th 1881, and an ordinance of the borough of Millvale, passed May 9th 1881, a certain corporation known as the Transverse Railway Company, had been given authority to place tracks over the same ground which, as claimed by the complainants, the defendants were about to occupy, after crossing the complainant's tracks; and that said Transverse Company was in the actual possession of said streets, running cars over the same, although this was part of the chartered route of the defendants, without effectual opposition from the latter.

As to the right of the defendants to build their crossing at grade, the Master reported, inter alia, as follows:

"The first question is, whether the Evergreen Company has any existing corporate right to extend its road into or toward the city of Pittsburgh. The plaintiffs deny that any such power exists, for the reason that since the year 1873, the defendant has neglected to complete its line, and has been guilty of an abuse of its franchises to construct the road, and by reason thereof has forfeited its right to do so now, and that under the first section of the Act of 19th June 1871, P. L. 1361, the Master has the right to inquire into these facts as to the forfeiture, as though on a bill filed by the attorney general in the name of the Commonwealth against the defendant.

"Assuming, for the purposes of this case, that these facts can be inquired into in this case, is it true that the defendant has lost its right to complete its line, by reason of its failure to do so since 1873? There is no limit in the charter of the defendant within which its line should be completed. It appears by the testimony of J. J. Gillespie, a director of the defendant company from its organization, and its president from 1874 until recently, and who was called by the plaintiffs, that the company always intended, sooner or later, to construct the road into the city; that the company did not have the money to

build that portion of the road, although in 1875 its line was located into the city, and at that time application was made to the officers of the Western Pennsylvania Company for permission to cross, with a view to connect with the Pittsburgh & Western Railroad, located between the Western Pennsylvania Railroad and the river; that the company, at the time, intended to go as far as it could; that the officers of the Western Pennsylvania objected to the crossing, and the crossing was not made, partly because of financial embarrassments and partly because it would be a hard fight with the Western Pennsylvania Company.

"Thus we have the case of a charter without limit as to time; the company proceeding under its charter as far as it was able, but never abandoning the purpose to go further as soon as its means would justify, and now proposing to make the crossing. I fail to see under the evidence that the defendant has forfeited its right to extend its road."

The Master also found that the overhead and circular crossings were impracticable.

To this report the complainants filed, inter alia, the following exceptions:

"2. The Master erred in not finding, and wholly omitting from his report, the fact, that the Transverse Passenger Railway Company, in 1881, in pursuance of authority given by the city of Pittsburgh, did construct a double track passenger railway over said Forty-third street, from said Butler street to the Allegheny river, and thence by the Ewalt street bridge, up to or near the plaintiff's tracks, on Bridge street, in Millvale borough. He erred in not finding that the route of the defendant company, in the city of Pittsburgh, had been wholly lost to it, by its failure and refusal to locate a line of road upon said Forty-third street, and construct its road thereon, if it could be constructed, and that by reason of said neglect, the said Transverse Passenger Railway Company was entitled in law to the occupation and use of said street and bridge for its tracks. He erred in not finding that said Transverse Passenger Railway Company having been built on said Forty-third street, the defendant company was thereby estopped from attempting to extend its road southward from Bennett's station in to the city of Pittsburgh, and along Forty-third street to Butler street. He erred in not finding from evidence in the case that there was no intention upon the part of the defendant company, even if it crossed the tracks of the plaintiff company, to construct its road from the Allegheny river, along Forty-third street to the terminus mentioned in its charter. He further committed error in not finding that there being no intention shown by the evidence upon the defendant company to build its road in the city of

Pittsburgh, as matter of law, the right of said defendant company under its charter to construct its road in the city of Pittsburgh was gone."

" 5. He erred in finding as follows : ' Thus we have the case of a charter without limit as to time, the company proceeding under its charter as far as it was able, but never abandoning the purpose to go further as soon as its means would justify it, and now proposing to make the crossing. I fail to see under the evidence that the defendant has forfeited its right to extend its road.' He should have found as a matter of law that the company had abandoned its purpose to construct its road south of Bennett's station into the city of Pittsburgh, and he should have further found as matter of law that although there was no time fixed in its charter within which the road was to be built, yet in equity the right to do so was gone because of the failure and laches of the defendant company, from the fall of 1872 to build its road to its terminus in Pittsburgh, and he should have found that the defendant's right to build its road as matter of law, was forfeited."

The opinion of the court on these exceptions was as follows : " That a private party cannot, in the absence of a statutory authority, take advantage of a forfeiture resulting from irregularities or departures from the charter ; that that is a question for the sovereign power alone, which may waive it or enforce it at pleasure, and that courts are bound to regard it as a corporation, so far as third persons are concerned, until it is dissolved by a judicial proceeding on behalf of the government that created it, is too clearly established to call for a citation of authorities, and is not questioned by plaintiffs' counsel. But it is urged that the Act of the 19th of June, 1871, section 1, changes the law in regard to this matter in this state. We do not consider that that Act will properly bear any such construction. It provides that : ' In all proceedings in courts of law or equity of this Commonwealth, in which it is alleged that the private rights of individuals, or the rights or franchises of other corporations, are injured or invaded by any corporation claiming to have a right or a franchise to do the act from which such injury results, it shall be the duty of the court in which such proceedings are had, to examine, inquire and ascertain whether such corporation does in fact possess the right or franchise to do the act from which such alleged injury to private rights or to the rights and franchises of other corporations results, and if such rights or franchises have not been conferred upon such corporations, such courts—if exercising equitable power—shall, by injunction at suits of the private parties or other corporations, restrain such injurious acts,' etc. It is true the Act does make it the duty of the court to inquire

[Western Pennsylvania R. R. Co.'s Appeal.]

whether the power or franchise does in fact exist in the corporation and while this alone might bear the interpretation claimed by plaintiff, the next portion of the sentence sets at rest all possible doubt by declaring ' and if such rights and franchises have not been conferred upon such corporation, then the court shall interfere by injunction.' And thus we see by the very terms of the Act it is only the question as to whether the charter confers the powers claimed that gives the court authority to enjoin, and the other questions arising out of a loss of franchises by the acts of the corporation are not involved."

The court accordingly entered a decree overruling the exceptions, dissolving the preliminary injunction, granting the defendants permission to build a crossing at grade, over the complainant's track, at the point in question, and directing the manner in which the same should be constructed and operated; thereupon the complainants took this appeal assigning for error the decree of the court.

*Hampton* (with whom was *Dalzell*), for appellants.—If a corporation undertakes to use a power which it has lost by non-user or abandonment, a court of equity can inquire into and enjoin the use thereof under the Act of June 19th 1871. The purpose of the Act was to enable a private citizen to go into court and show that a corporation has lost one of its powers by non-user, without having recourse to a writ of quo warranto, through the attorney general, for a forfeiture. The question is not as said by the court below, whether the power was conferred, but whether it is actually possessed. The statute directs the court " to examine, inquire and ascertain whether such corporation does in fact possess the right or franchise" claimed. . In the cases under this Act, the question whether the corporations possessed certain franchises, was determined upon evidence of facts wholly outside the charters under review : McCandless' Appeal, 20 P. F. S. 210 ; Edgewood Railroad's Appeal, 29 P. F. S. 257. A non-user or misuser is a ground for forfeiture, although not expressly declared to be such by statute : Pierce on Railroads p. 11 ; Commonwealth *v.* Commercial Bank, 28 Pa. St. Rep. 383 ; Attorney General *v.* Petersburg, &c. R. R. Co., 6 Ired. 456 ; State *v.* Mil. L. S. & W. R. Co., 45 Wisconsin 579. A company may lose its right to its location by permitting another company to take the land included within it, and to build a road upon it : Pierce on Railroads p. 260 ; Coe *v.* New Jersey Midland Railroad Co., 4 Stewart (N. J.) 105, 146 ; Chesapeake & Ohio Canal Co. *v.* Baltimore & Ohio R. R. Co., 4 Gill & J. 1.

*D. T. Watson* (with whom was *F. M. Magee*), for the appellees.—While the failure of the appellees to build the cross-

ing, for ten years, might be a cause for a forfeiture of the right by the state, or for forfeiting the entire franchise enforceable by quo warranto ; yet such non-user of a franchise does not, ipso facto, work a forfeiture where, as in this case, the state has taken no action : Pierce on Railroads 11. The Act of June 19th 1871, does not change this rule so as to enable a private citizen to enforce forfeiture of the franchises of a corporation by a bill in equity. In all the cases cited by the appellants, the government was the mover. That Act is declaratory and simply establishes the right of a private citizen, by bill in equity, to ascertain whether a corporation has a certain power, which it attempts to exercise, conferred upon it by its charter, as a corporate franchise. It settles a question upon which there has been a difference of opinion and perhaps much conflict of decision, namely, that private parties may come into equity, when they complain that private rights which belong to them as individuals have been encroached upon by an offending corporation : Lejee v. The Continental Passenger Railroad, 10 Phila. 362.

Mr. Justice GORDON delivered the opinion of the court, January 7th 1884.

The question presented for our consideration, in this case, is the right of the Evergreen Railroad Company to extend its road from its present terminus, at Bennett's station, along Bridge street, in the borough of Millvale, to the Ewalt street bridge, a distance of some five or six hundred feet. If the company has this right of extension, it necessarily includes the matter in controversy, the crossing of the Western Pennsylvania Railroad, and we need not trouble ourselves about anything further; on the other hand, if it has no such right, its attempt to interfere with the tracks of another corporation is without warrant of law and must be restrained. But what has been done by another company, by way of occupying that part of the defendant's charter route which is on the Pittsburgh side of the river, has nothing whatever to do with this case, for whatever rights such company may have acquired by virtue of its occupancy, they were certainly not acquired for the appellant, hence, it cannot set them up for the purpose of defeating the claim of the appellee. The Evergreen Company may, by its laches, have abandoned that part of its line to the company now in possession ; that, however, is a question for the parties interested, and not for the appellant. As the Western Pennsylvania Railroad Company has been injured by no default of the appellee on the south side of the river, it cannot be heard to complain of such default. Besides this, the Evergreen Company might have voluntarily abandoned its route on the

south side, without at all affecting the issue in hand. This company was originally incorporated as a street passenger railway, and afterwards, by a supplementary Act of March 9th 1872, the powers and privileges contained in the Act of February 19th 1849, were conferred upon it, and the original design was thus changed; steam was substituted for horse power. This change of design may have rendered necessary the abandonment of the south side of the river; that part of the route may have been very well adapted to the use of horse power, but not at all to steam. Indeed, the Master gives two very good reasons why that part of the route should have been abandoned : (1) The Ewalt street bridge, which formed part of the original line, is unfit for the use of steam power; it cannot safely bear a transportation over it of more than eight tons. (2) The grade of Forty-third street, in the city of Pittsburgh, is such that it would be difficult to operate upon it a road using steam power. Let it then be, for these or any other reasons, that this part of the route was abandoned; what then? It does not follow that the north side of the river was also abandoned; that the company, for that reason, could not extend its tracks to the river, in order to connect with that stream, or with some other improvement. Is there anything in the charter which prohibits this? which compels this corporation to build the whole of its road or none? If there is any such provision or prohibition in the organic law which gave life to this company, its case is at an end. The powers of this, as of every other corporation, must be found in its charter, and under the provisions of the Act of 1871, the plaintiff has the undoubted right to call upon the defendant, to show, by its charter, that it has the power to do what it proposes to do; and so, on the other hand, it may be shown from the same instrument that powers once possessed have been forfeited by lapse of time or otherwise. But if there are any such provisions or limitations in the Evergreen charter, they have not been pointed out to us.

But the appellant, by its counsel, insists that the Act of 1871 warrants a much wider investigation into causes of forfeiture than those which may appear merely from the conditions and limitations of a charter. In other words, the position of the Commonwealth, as in a writ of quo warranto, may be assumed, and the mere non-user of the franchise proved, in order to establish a forfeiture of the defendant's right to act under its charter. But to this we cannot agree. We are inclined to think that a forfeiture for such reason as this rests wholly with the state, and that to this extent at least, the doctrine as stated in the cases of Irvine *v.* The Lumbermen's Bank, 2 W. & S. 204, and Dyer & Co. *v.* Walker, 4 Wr. 157, still prevails. The Act of 1871 contemplates nothing more than that it shall be made to appear

from the charter, that the corporation has the power to do the particular act in controversy, and which involves some right of the contestant, but when we get beyond this, we assume something with which we have no business in a collateral proceeding : we assume to assert the rights of a third party, the Commonwealth, who may or may not, at her own option, insist upon the observance of those rights. The Commonwealth and the Greenwood Railroad Company are like any other contracting parties. A contract may be forfeited by the laches of one of the parties to it, but if the other does not choose to insist upon that forfeiture, no one else can take advantage thereof. The appellant alleges that the appellee has omitted to do something that it ought to have done under its contract with the state, and in consequence of which the state may move to have that contract annulled. Well, let it so be that the Commonwealth may move for a rescission of this contract, yet by what warrant does the Western Pennsylvania Company assume to control the will of the Commonwealth and to use the rights of the state for its own purposes ? The Commonwealth has put no limit, in the way of time, upon the exercise of the franchise granted to the defendant, and it is but an assumption on part of the appellant to suppose that, for the promotion of its own welfare, it can impose such a limit. The cases of McCandless' Appeal, 20 P. F. S. 210, and the Edgewood Railroad Co.'s Appeal, 29 Id. 257, do not support the contention of the appellant. In the one case, it was held, that a private railroad, which had been, by the courts, pronounced a public nuisance, and ordered to be abated as such, could not have its character changed by the purchase and use of it by a corporation; in the other, that a charter authorizing the building of a public railroad did not warrant the construction of a purely private one. In each the question was one of corporate power, and that question was determined by the inspection of the charter of the company proposing to exercise the power. This, however, is exactly what the court below has done in the case before us, hence, its decree cannot be impeached. The non-user by the appellee of part of its route might be used against it by way of estoppel, but not by way of forfeiture, in the strict sense of that term. As to the south side of the river, the Transverse Railway Company might, perhaps, avail itself of this kind of a plea.

Those representing it might well say, you have abandoned this ground to us, in that you permitted us to occupy it without protest; we have put costly improvements upon it, and the assertion of your charter rights after our undisputed occupancy, will work us irreparable injury; we insist, therefore, not that you have forfeited those rights, but that, as against us,

you are estopped from setting them up. But the appellant has nothing to urge in the way of estoppel; with it matters remain just as they did when the Greenwood charter was granted. The defendant's delay has worked the plaintiff no harm, and the effort here now is to defeat a legislative grant on a plea which can avail no one but the Commonwealth.

Without reference, then, to that part of the Master's report which finds that there has been no actual abandonment of the defendant's route, and which finding of itself should settle this controversy, we conclude that the appellant has no standing to defeat the appellee's right, and that the decree of the court below ought not to be disturbed.

As to the incidental question of the overhead crossing, nothing need be said by us, for that, according to the Master's report, whilst possible, is not under the circumstances, practical.

The decree of the court below is affirmed at the costs of the appellant.