# Petition of the Philadelphia and Merion Railway Company.

*Corporations — Collateral attack upon charter — Forfeiture—Turnpike road companies—Street railway companies.*

Where a turnpike road company has a franchise under an old charter to construct and operate a street railway upon its roadbed, but has never exercised such right, the franchise can be forfeited only in a direct proceeding by the commonwealth; not in a proceeding by a street railway company organized under the Act of May 14, 1889, P. L. 211, to condemn a right of way over the roadbed.

Where a turnpike road company has a right under its charter to construct a street railway on its roadbed, a street railway company subsequently organized has no power to lay its structure on the same roadbed.

*It seems* that article 16, section 1, of the constitution, relating to the forfeiture of existing charters, or grants of special or exclusive privileges, does not apply to an active existing corporation, fully organized, and doing business in good faith at the time of the adoption of the constitution, although such corporation has an additional privilege or franchise which it has not exercised.

A turnpike company which has a right to lay railway tracks on its roadbed may, in condemnation proceedings instituted against it by a street railway company organized under the act of May 14, 1889, deny the latter company's right to lay tracks, although it is expressed in the charter of the street railway company that it has the right to lay tracks upon the turnpike road. Such a right is not essential to the validity of the street railway company's charter, and therefore its adverse determination in a collateral proceeding does not affect the charter.

Argued April 4, 1898.    Appeal, No. 461, Jan. T., 1897, by the Philadelphia and Merion Railway Company, from order of C. P. No. 4, Phila. Co., June T., 1897, No. 800, making absolute rule to quash condemnation proceedings.    Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and DEAN, JJ. Affirmed.

Rule to quash comdemnation proceedings.    Before ARNOLD, P. J.

The following facts were agreed upon by the parties :

1. The Blockley and Merion Turnpike and Plank Road Company was incorporated by the Act of Assembly of April 5, 1853, P. L. 291, and various supplements were passed thereto on April 13, 1854, P. L. 362; April 21, 1856, P. L. 474; March 29, 1859, P. L. 289, and March 31, 1870, P. L. 711, all of which are to be taken and considered as a part hereof.    In 1853, in accordance with its charter, it built its turnpike, and up to 1890, when it was sold out as hereinafter set forth, it continually operated the same, collecting tolls from the users thereof.

2. On November 26, 1887, said company applied to the court of common pleas of Montgomery county for a further amendment to its charter, extending its route, which application was granted on December 19, 1887, on the express condition that said company should first file and record an acceptance of the provisions of the constitution of this commonwealth.    Whereupon said corporation duly accepted the provisions of said constitution, filed its acceptance with the court and recorded the same in the office of the recorder of deeds of Montgomery county, at Norristown ; and immediately thereafter extended its route under the authority thus given, and thereafter continuously operated the same as a turnpike, collecting tolls from users thereof until sold out as hereinafter set forth.

3. Under a trust mortgage executed by said company on October 1, 1886, to secure a certain issue of bonds, all the property, rights and franchises of the said company were duly sold to James A. Logan and his associates on August 2, 1890.    Said Logan and his associates thereupon duly organized under the name of the Philadelphia, Bala and Bryn Mawr Turnpike Company in accordance with the several acts of assembly relative to the reorganization of turnpike companies, and letters patent

were thereupon, on September 15, 1890, duly granted to them by this commonwealth, declaring "the said corporation to be a body corporate and politic in deed and in law, by the name, style and title of Philadelphia, Bala and Bryn Mawr Turnpike Company, and entitled to all the privileges, immunities, franchises and powers conferred by the act approved the fifth day of April, Anno Domini one thousand eight hundred and fifty-three, entitled 'An Act to incorporate the Blockley and Merion Turnpike and Plank Road Company,' etc., and the various supplements thereto;" and said Logan executed a deed to said Philadelphia, Bala and Bryn Mawr Turnpike Company, on September 3, 1890, embracing the property and franchises so by him as aforesaid purchased from said trustee.

4. Neither said Blockley and Merion Turnpike and Plank Road Company nor said Philadelphia, Bala and Bryn Mawr Turnpike Company ever commenced to lay out or construct a railway along any part of the route of its road; nor did they or either of them ever obtain the city's consent so to do; nor did they or either of them at any time commence or carry on any other business than that of a turnpike company, except that the Blockley and Merion Turnpike and Plank Road Company did construct and have in operation for a time, over a portion of its route, a plank road.

5. On February 9, 1897, the commonwealth duly granted to the Philadelphia and Merion Railway Company, under the act of May 14, 1889, P. L. 211, and its supplements, a charter to construct and operate, in the city of Philadelphia and county of Montgomery, a street railway, inter alia, over that portion of the roadbed of the said Philadelphia, Bala and Bryn Mawr Turnpike Company, described in the petition filed in this case, which charter is to be taken and considered as part hereof.

6. By ordinance duly passed and approved on July 14, 1897, the city consented to the construction and operation by the Philadelphia and Merion Railway Company of its railway, inter alia, on that portion of the roadbed of said Turnpike Company described in the petition filed in this case, which ordinance is to be taken and considered as part hereof.

7. Said Philadelphia and Merion Railway Company defined its route in accordance with its charter and said ordinance, inter alia, over that portion of the roadbed of said turnpike

described in the petition filed in this case, of a sufficient width for two tracks, but was unable to come to an agreement with said Philadelphia, Bala and Bryn Mawr Turnpike Company as to the amount to be paid said last-named company as damages for such use and occupation, and thereupon filed its petition for a jury of viewers in this case.

8. Whereupon said Philadelphia, Bala and Bryn Mawr Turnpike Company, alleging that by reason of the authority given it under the act of March 29, 1859, aforesaid, the said Philadelphia and Merion Railway Company was without lawful warrant for the taking and condemnation of its property, as contemplated by the petition for a jury of view, filed its answer and made the present motion to quash said petition.

The court made absolute the rule to quash the proceedings.

*Error assigned* was the order of the court.

*Alex Simpson, Jr.,* with him *Francis Shunk Brown,* for appellants.—The appellees have lost all right to construct a railway by failure to construct within the time limit: Act of March 29, 1859, P. L. 289; General Railroad Act of February 19, 1849, P. L. 79; Hinchman v. Turnpike, 160 Pa. 150.

In addition, appellees have lost all right to construct a railway along any part of their route by reason of laches, also by virtue of the provision of the constitution of 1874: Chincleclamouche Lumber & Boom Co. v. Com., 100 Pa. 438; Girard College P. R. R. v. 13th & 15th P. R. R., 7 Phila. 620; Junction P. Ry. v. Williamsport P. Ry., 154 Pa. 116; Penna. R. R. v. Bowers, 124 Pa. 183; Phila. & Gray's Ferry Ry. Co.'s App., 102 Pa. 123; Com. v. Lykens Water Co., 110 Pa. 397.

The provisions in section 1 of the act of 1889, has no relevancy under the facts here admitted, and moreover, manifestly relates to charters for other street railways only: People's P. Ry. Co. v. Marshall St. Ry. Co., 25 W. N. C. 318; Hestonville M. & F. P. Ry. v. 42d St., etc., Ry., 4 Dist. Rep. 343.

The question cannot be raised in this proceeding: Larimer etc., Ry. v. Larimer St. Ry., 137 Pa. 533; 13th & 15th St.'s P. Ry. v. Southern P. Ry., 3 Dist. Rep. 337.

*John G. Johnson,* for appellee.—The secretary of the commonwealth, because of the prior grant to the appellee of the right

thus to construct, had no authority to grant letters patent au-
thorizing the appellant to construct a railroad upon the appel-
lee's turnpike.

The invalidity of the grant to the appellant by the secretary
of the commonwealth can be set up by the appellee in the de-
fense of its possession of its turnpike.

There was no duty imposed upon the appellee by the act of
1859 to commence its construction within three years, or to
complete it within any designated time.

The grant to the appellee, by the act of 1859, was upon no
implied condition that it would build a railroad within any limit
of time : Hinchman v. Turnpike Co., 160 Pa. 150.

The constitution of 1874 does not affect the right of the ap-
pellee : Chincleclamouche Lumber & Boom Co. v. Com., 100
Pa. 438 ; Douglass's Appeal, 118 Pa. 65.

Even though the grant of a privilege to build a railroad, con-
ferred by the act of 1859, was upon an express or implied con-
dition as to the completion, it could not be questioned by the
appellant, but only by writ of quo warranto, or other legal pro-
ceedings instituted by the commonwealth : Western Penna. R.
R. Co.'s App., 104 Pa. 399.

OPINION BY MR. JUSTICE GREEN, July 21, 1898 :

The Blockley and Merion Turnpike and Plank Road Com-
pany was incorporated by the Act of Assembly of April 5, 1853,
P. L. 291, and various supplements thereto were subsequently
passed, which are enumerated in the agreed state of facts appear-
ing on the record. By one of these supplements passed in
1859, P. L. 289, the company was "authorized to lay out and
construct a railway of the same gauge as the present passenger
railways in the city of Philadelphia, over the route of their road
or any part thereof, subject to all the limitations and restrictions
of the general railroad laws of this commonwealth, and to the
ordinances of the councils of Philadelphia relative to passenger
railways." The company built its turnpike in 1853 and con-
tinually operated the same, collecting tolls from persons using
the road, until the year 1890. In November, 1887, the company
applied to the court of common pleas of Montgomery county
for further amendment to its charter extending its route, which
application was granted on condition that the company should

first file and record its acceptance of the provisions of the constitution of this commonwealth.   This was done, and thereupon the company extended its route accordingly and thereafter continued to exercise its franchise in operating the road and collecting tolls for its use until the year 1890.   In August of that year all the property, rights and franchises of the company were sold at judicial sale under a mortgage executed in 1886, and James A. Logan and his associates became the purchasers thereof.   Thereupon the purchasers organized a new company called the Philadelphia, Bala and Bryn Mawr Turnpike Company, in accordance with the several acts of assembly relative to the organization of turnpike companies, and letters patent were duly issued to the new company on September 15, 1890, by the commonwealth, declaring that the said corporation was entitled to all the privileges, immunities, franchises and powers conferred upon the old company by the original act of 1853 and the various supplements thereto.   Neither the old company nor the new one ever commenced to lay out or construct a railway along any part of the route of the road, nor did they carry on any other business thereon than that of a turnpike company except that a plank road was constructed and operated for a time over a part of the road.   In February, 1897, the petitioner was duly incorporated under the Act of May 14, 1889, P. L. 211, with power to construct and maintain a street railway in the city of Philadelphia and county of Montgomery, inter alia, over a portion of the roadbed of the Philadelphia, Bala and Bryn Mawr Turnpike Company.   The city of Philadelphia consented that this might be done.   The appellant filed a petition to have viewers appointed to assess damages for the occupation of the roadbed of the turnpike company, for the reason that they could not agree as to the amount, whereupon the turnpike company filed an answer and moved to quash the proceedings on the ground that the appellant had no legal right to lay a street railway on their turnpike.   The rule to quash the proceedings was made absolute, hence this appeal.

The contention of the appellee is that the additional power conferred by the act of 1859, authorizing them to lay out and construct a railway upon the bed of their turnpike, gave them a legal authority to construct such railway, and therefore brought them within the protection of the Act of May 14, 1889,

P. L. 211, Purd. Dig. 2637, under which the appellant was
incorporated.   The first section of that act provides that "Any
number of persons not less than five may form a company
for the purpose of constructing, maintaining and operating a
street railway on any street or highway upon which no track is
laid or authorized to be laid or to be extended under any exist-
ing charter."   If the appellee at the time of the proposed occu-
pation of its roadbed by the appellant by laying upon it a street
railway, had a lawful authority of its own to construct thereon
such a railway, it follows, under our decision in Homestead
Street Railway v. Pittsb. & Homestead Street Railway, 166 Pa.
162, that the appellant could not lay its structure on the same
roadbed.   The appellant contends however that the appellee
does not possess the lawful authority to lay a street railway on
its turnpike road, because (1) it lost its franchise so to do by
the operation of the first section of article XVI of the state con-
stitution, and (2) by its laches in not exercising its franchise
for thirty-eight years.   To this contention the appellee replies
that the loss or forfeiture of this franchise of the appellee from
either or both of these causes can only be called in question by
the commonwealth in a proceeding by writ of quo warranto,
and hence it cannot be availed of by the appellant in this pro-
ceeding.   If the question cannot fairly be raised in the present
proceeding, and may be raised by the attorney general upon a
writ of quo warranto, it will perhaps be more desirable that we
should at present abstain from an expression of our views re-
specting the merits of that contention.   If, on the contrary, we
are of opinion that the question can be raised at this time, and
in this proceeding, it would be our duty to decide it fully at
this time.

     After a careful consideration of the subject we have reached
the conclusion that the question cannot be raised in this pro-
ceeding, and therein we concur with the learned court below.
The right claimed by the appellee is a corporate franchise which
has been granted by the commonwealth.   Whether it has been
forfeited by non-exercise or otherwise is a question between the
commonwealth and her grantee.   If the commonwealth does
not choose to exercise her right to assert the forfeiture, the
decisions, as we understand them, do not confer that right upon
a private litigant.   The appellant is such a litigant, claiming a

result only for its private advantage. The whole subject was well considered in the case of Western Pennsylvania Railroad Company's Appeal, 104 Pa. 399. We there said: "But the appellant by its counsel insists that the act of 1871 warrants a much wider investigation into causes of forfeiture than those which may appear merely from the conditions and limitations of a charter. In other words, the position of the commonwealth, as in a writ of quo warranto, may be assumed, and the mere non-user of the franchise proved, in order to establish a forfeiture of the defendant's right to act under its charter. But to this we cannot agree. We are inclined to think that a forfeiture for such reason as this rests wholly with the state, and that to this extent at least the doctrine as stated in the cases of Irvine v. The Lumbermen's Bank, 2 W. & S. 204, and Dyer & Co. v. Walker, 40 Pa. 157, still prevails. The act of 1871 contemplates nothing more than that it shall be made to appear from the charter that the corporation has the power to do the particular act in controversy, and which involves some right of the contestant; but when we get beyond this we assume something with which we have no business in a collateral proceeding. We assume to assert the rights of a third party, the commonwealth, who may or may not, at her own option, insist upon the observance of those rights. The commonwealth and the Greenwood Railroad Company are like any other contracting parties. A contract may be forfeited by the laches of one of the parties to it, but if the other does not choose to insist upon that forfeiture no one else can take advantage thereof. The appellant alleges that the appellee has omitted to do something that it ought to have done under its contract with the state, and in consequence of which the state may move to have the contract annulled. Well let it be so that the commonwealth may move for a rescission of this contract, yet by what warrant does the Western Pennsylvania Company assume to control the will of the commonwealth, and to use the rights of the state for its own purposes?"

These views seem to us to control the present case. Elaboration will not make them plainer, and their pertinency is manifest. While we do not intend to discuss the other questions presented in the paper-books, we feel at liberty to say that we do not consider the first section of the sixteenth

article of the constitution applicable, because the appellee, of itself, and through those whose franchises it owns and represents, was at all times an active existing corporation, fully organized, and was doing business in good faith at the time of the adoption of the constitution. The "grants of special or exclusive privileges" mentioned in the section are expressed antithetically to "existing charters," and must have some other and independent repository than the charters which are separately designated. Upon the theory contended for by the appellant the subsequent language of the section would have an insensible meaning. If an existing charter did possess a bona fide organization, and was doing business at the adoption of the constitution, it certainly did not incur the penalty of forfeiture, because it had not violated the constitutional provision, although it did possess an added power to those with which it was originally clothed. Yet the penalty prescribed is a unit, and is common to both. While it is clearly applicable to each in their individuality, it is not applicable, because it is not prescribed, in the case of a charter which has conformed to the requirement, though it has an added privilege which it simply has not exercised.

Nor do we think there is any force in the contention that the appellee cannot question the right of the appellant to lay its track on their turnpike, because that question necessarily involves the forfeiture of this appellant's charter, which cannot be considered in a collateral proceeding. We do not understand that any such consequence results. The right involved is not essential to the validity of the appellant's charter, and therefore its adverse determination does not affect the charter. The only question really involved is whether the appellant may lay a portion of its track on certain property of the appellee. If it cannot be laid there, it does not at all follow that the charter of the appellant is avoided. There is nothing growing out of the contention in this case that could possibly prevent the appellant from laying its track upon some other location.

The assignments of error are not sustained.

The decree of the court below is affirmed at the cost of the appellant.