## Bangor Electric Company's Petition.

Argued December 4, 1928. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Everett Kent,* of *Kent & Rockwell,* for appellants.— The court should not deprive the borough of protection: York Haven Co. v. P. S. C., 287 Pa. 241; Norristown v. Transit Co., 277 Pa. 459; Phila., etc., Co. v. P. S. C., 80 Pa. Superior Ct. 355; New York, etc., Co. v. P. S. C., 72 Pa. Superior Ct. 523.

*David B. Skillman,* for appellee.

OPINION BY MR. JUSTICE SIMPSON, January 7, 1929:

In 1918, the Bangor Electric Company was chartered, under the laws of this Commonwealth, "for the purpose of supplying to the public [in a portion of the Borough of Bangor] power by means of electricity, and heat by means of exhaust steam necessarily generated by the electric plant." It will be noticed that it was not given a general right to furnish electricity and steam; but only the former for power, and as to the latter only "exhaust steam necessarily generated by the power plant." These were the limits of its authority to transact business, in the absence of a statute conferring additional powers: Com. v. Erie & Northeast R. R. Co., 27 Pa. 339; Citizens Electric Illum. Co. v. Lackawanna & Wyoming Valley R. R. Co., 255 Pa. 176; Solar Electric Co.'s App., 290 Pa. 156, 161. There is no such statute.

It successfully carried on its business until 1927, when its plant was destroyed by fire, and it was faced with the fact that, to reconstruct it and proceed as theretofore, would result in a continuous loss, because the electric railway companies, which had been its principal customers, had ceased to operate. It therefore determined to construct a plant by which it could supply live steam to those who had theretofore been receiving exhaust steam; and to purchase from a neighboring electric company sufficient current to supply the consumers in that branch of its business. This plan was carried out; and

the electricity and steam supplied was satisfactory to each class of customers. Possibly because of doubts as to its legal right to manufacture and supply live steam which was not necessarily generated by its electric plant, it subsequently agreed, on terms favorable to its creditors and stockholders, and of advantage also to its steam heat users, to transfer the plant to a company authorized generally to supply steam for heating purposes, which company agreed to furnish live steam to the electric company's steam customers. There were no agreements between appellee and those consumers which stood in the way of carrying out the proposed plan, which could not be consummated, however, unless the electric company surrendered so much of its charter powers as provided for the furnishing, in that territory, of "heat by means of exhaust steam necessarily generated by the electric plant."

It therefore filed a petition, in the present proceeding, praying permission to surrender that portion of its charter powers. This action was taken under the Act of April 9, 1856, P. L. 293, which now seems to be conceded to have been the applicable statute. Testimony was produced, the court found the facts above set forth, and, upon a review of all the evidence, stated, as an ultimate finding of fact, that "the prayer of the petition [could] be granted without prejudice to the public welfare, or the interests of the corporators." This being the test provided by the statute, it decided, in a carefully considered opinion, that the prayer of the petition should be granted. From the decree which followed, some of the steam heat users prosecute this appeal.

No exception was taken in the court below to any of the findings of fact, either preliminary or ultimate, and in this court the only assignment of error is to the entry of the decree. Under such circumstances, all the facts found must be accepted as true (Atlas Portland Cement Co. v. American Brick & Clay Co., 280 Pa. 449; Keck v. Vandyke, 292 Pa. 532), and, since the act authorized the

granting of the prayer of the petition, if the ultimate fact above stated was found to exist, we must affirm the decree.

The same conclusion is reached from another standpoint. There is no statute authorizing an appeal in this class of cases; hence this one must be treated as a certiorari; in which event, though the Act of April 18, 1919, P. L. 72, authorizes us to consider the evidence, we only do so in order to determine whether or not there was sufficient, if believed, to sustain the findings and decree: Hand's Case, 266 Pa. 277; Bedford v. Rosser, 283 Pa. 345; Bright's Contested Election, 292 Pa. 389, 394. Here there was ample evidence for the purpose; indeed we do not see how any other conclusion could have been reached, especially in view of what we quoted with approval in Norristown v. Reading Transit & Light Co., 277 Pa. 459, 464, that "A public service corporation cannot be compelled to continue indefinitely operations which will result in the exhaustion of its assets." Of course the failure of such a corporation to perform its charter duties may result in a forfeiture of its charter; but this will never be decreed except in a direct proceeding, at the instance of the Commonwealth; all other parties having no standing to apply therefor: Petition of the Phila. & Merion Ry. Co., 187 Pa. 123; Mount Sharon Cemetery Charter, 277 Pa. 79.

The decree of the court below is affirmed and the appeal is dismissed at the cost of appellants.